UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-274-GWU

CHARLES MITCHELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Charles Mitchell brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Income and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

     Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

5

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Mitchell, a 50-year-old former truck driver with a high school education, suffered from impairments related to chronic obstructive pulmonary disease and hypertension. (Tr. 49, 53). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 51, 53). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 53-54). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 54).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert William Ellis included an exertional restriction to light level work restricted from a full range by a need to avoid concentrated exposure to dust, fumes, noxious gases and other environmental pollutants. (Tr. 23). In response, the witness identified a significant number of jobs in the national economy which could still be performed, including rental clerk and office helper. (Id.). The ALJ then added a sit/stand option in 30

7

minute intervals. (Id.). Ellis testified that this would reduce the job numbers by half but still leave a significant number of positions remaining available. (Tr. 24). Finally, the witness indicated that the addition of a limitation concerning a need to avoid climbing steps and stairs would not reduce the previously cited job numbers. (Id.). Therefore, assuming that the vocational factors considered by Ellis fairly depicted Mitchell's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

In January of 2006, Dr. Peter Rock, a treating source, performed a Department of Transportation examination. The examination results were unremarkable, revealing only a need for corrective lenses and no other restrictions. (Tr. 135). In August of 2006, Dr. Rock diagnosed chronic obstructive pulmonary disease and bronchitis. (Id.). The only activity restriction imposed by the physician was a need to quit smoking. (Id.). The findings of the ALJ were compatible with this opinion.

Dr. Robert Hoskins examined Mitchell in August of 2007 and diagnosed "moderate to severe" chronic obstructive pulmonary disease. (Tr. 138). The plaintiff was noted to smoke cigarettes. (Tr. 137). Dr. Hoskins somewhat vaguely indicated that the claimant would be restricted to "sedentary activities or light exertion." (Tr. 138). Mitchell should also "avoid fumes, smoke, excessive heat or excessive cold." (Id.). The ALJ's findings were essentially consistent with this opinion.

Mitchell sought treatment at the Veteran's Administration Medical Center (VAMC). (Tr. 174-239). A chest x-ray revealed scattered areas of "groundglass in appearance," in the lung parenchyma from chronic interstitial disease and some apical fibrosis with subpleural cysts. (Tr. 175). Chronic obstructive pulmonary disease and tobacco abuse disorder were diagnosed by the VAMC staff. (Tr. 222). The only functional restriction indicated was a need to quit smoking. (Tr. 205, 233). Thus, the VAMC treatment records do not support the plaintiff's claim of total disability.

Dr. Allen Dawson reviewed the record and opined that Mitchell could perform a restricted range of light level work, reduced from a full range by a need to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. (Tr. 155-162). The functional restrictions presented to Ellis were essentially consistent with this opinion. Therefore, Dr. Dawson also supports the administrative decision.

Dr. Barry Burchett examined Mitchell in December of 2008. Clubbing and cyanosis were not detected upon physical examination. (Tr. 243). Dr. Burchett did not note rales or rhonchi. (Id.). Wheezing was reported. (Id.). Pulmonary function testing revealed severe chronic obstructive pulmonary disease and moderate restrictive pulmonary disease with improvement after bronchodilators were administered. (Tr. 254). The claimant had continued his smoking habit. (Tr. 242). The doctor diagnosed emphysema and hypertension. (Tr. 244). Dr. Burchett completed a Medical Source Statement of Ability to do Work-Related Activities upon

which he indicated that the plaintiff was limited to light level work, restricted from a full range by an inability to sit for more than eight hours a day in two hour segments, to stand for more than four hours a day in one hour segments, to walk for more than two hours a day in one hour segments, to more than occasionally climb or reach overhead, and a need to avoid all exposure to humidity and wetness, dust, odors, fumes and pulmonary irritants, and temperature extremes.  (Tr. 247-251).  The claimant asserts that these restrictions, particularly the environmental limitations, were more severe than those presented to the vocational expert.  Thus, he maintains that this report supports his disability claim.

      The court notes Dr. Burchett was only a one-time examiner.  His opinion was outweighed and offset by that of Dr. Rock and the VAMC staff, each treating sources who found only a need to quit smoking as a limitation on the plaintiff's activities.  The hypothetical question was also consistent with the opinions of Dr. Hoskins and Dr. Dawson.  Therefore, to the extent that Dr. Burchett's restrictions would be considered more severe than those in the hypothetical question, they were not binding on the ALJ.

      Mitchell also argues that the hypothetical question did not reflect the ALJ's findings.  The plaintiff notes that the hypothetical question included a need to avoid <u>concentrated</u> exposure to temperature extremes, humidity, dust, fumes or gases (Tr. 23) while the ALJ ultimately found that he would need to avoid <u>all</u> such exposure (Tr. 51).  However, the <u>Dictionary of Occupational Titles</u> (DOT) indicates that the jobs of

office helper (DOT Number 239.567-010) and rental clerk (DOT Number 295.357-018) do not require exposure to temperature extremes, wetness, and humidity.  Therefore, any discrepancy between the hypothetical question and the ALJ's ultimate findings is harmless with regard to these areas.  With regard to the restrictions regarding exposure to environmental pollutants, the record reveals on numerous occasions that the claimant continued his cigarette smoking habit.  In <u>Mullins v. Secretary of Health and Human Services</u>, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's continued smoking habit, "it was difficult to [e]nvision a severe and environmental restriction imposed by a pulmonary condition." <u>Mullins</u>, 836 F.2d at 985.  Therefore, the court must reject Mitchell's argument.

The undersigned concludes that the administrative decision should be affirmed.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of May, 2010.

**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**